Madden, Judge,
dissenting:
I cannot agree that plaintiff is entitled to recover.
The question is whether Congress intended that plaintiff, having been made the beneficiary of a special act which permitted him to be retired though he had not fulfilled the usual requisites for retirement under the general statutes, intended *551 further to prefer him above all other officers who are retired under the provisions of the general retirement laws. The findings of fact show that preference will amount to about $1,000 a year for life.
Such a discriminatory intention on the part of Congress should not lightly be found, as it would run counter to the natural instincts of legislators in common with other people. Admittedly, Congress could entertain and make effective by legislation such an intent. But an intent so unusual should, before it is found by a court, be solidly supported by the test of the statute, or by explanatory language used in the Committee or on the floor.
Here we get no light whatever from committee report or debate relating to the special act. Indeed a search of committee reports and debates with reference to a considerable number of such special acts over a period of years discloses that only rarely is the language of the committee directly helpful to an interpretation of the act. One case in which the Congressional intent was disclosed was that of Frank A. Jahn, a temporary officer (lieutenant, junior grade) in the Navy. Section 6 of the Act of July 12, 1921, 42 Stat. 122, 140, provided for the retirement of temporary officers under the general retirement statute if application should be filed not later than October 1, 1921. Jahn, in August 1921, filed a paper which was construed by the Judge Advocate General not to be an application for retirement, so that his time for filing a proper application expired. A special act of March 4, 1923, 42 Stat. 1500, authorized the President to appoint Frank Jahn a lieutenant (junior grade) in the Navy and to retire him and place him on the retired list of the Navy “with the retired pay and allowances of that grade.”
The House Eeport, 1252, 67th Congress, 2d Session, says of the bill which became the special act in that situation: “The purpose of this proposed legislation is to give to Frank A. Jahn the benefit of the Act of July 12, 1921, governing the retirement of temporary officers of the Navy.”
The language of Jaim’s act was the same as that of plaintiff’s act. The Congressional intent in Jahn’s case was not what plaintiff asserts that it was in his case.
*552 The opinion of the majority suggests that perhaps plaintiff had been wronged; that Congress may have been making special provision for him for that reason. There is no word in any report or debate so indicating. If Congress had intended to give future preferential treatment to plaintiff to right a past wrong, it would have been natural for it to disclose that justification for treating this officer better than others.
To return to the text of the act, the majority opinion relies principally upon the use of the word “allowances” in the act, urging that unless plaintiff gets the rental and subsistence allowances of an active officer, which he is not, that word will be rendered meaningless since there are no “allowances”, or only small ones for regularly retired officers. In the Horton and Blair cases, decided today, that argument was rejected by the court as to the word “emoluments,” when used in special acts. It was shown that there are perquisites of office which regularly retired officers receive which satisfy the call of the word “emolument” for a meaning in the statute. Those mentioned are treatment in a naval hospital at much less than ordinary rates with free medical care while there, the privilege of buying at naval stores, and the privilege of sending one’s children to the public schools in the District of Columbia while not residing in the District. Plaintiffs in the Horton and Blair cases got those “emoluments,” and it was not thought necessary to give them still others which are denied their regularly retired brethren. The language of the special acts there involved, “with the retired pay and emoluments of that grade,” received the interpretation “with the retired pay and retired emoluments of that grade.” Thus a natural, easy, and non-discriminatory interpretation is made.
In this case the language of plaintiff’s special act, “with the retired pay and allowances of that rank,” receives in the majority opinion the interpretation “with the retired pay and activo service, allowances” of that rank. Thus a discriminatory and what seems to me a forced and unnatural interpretation is made.
This distinction is made, it is urged, because if it is not made, plaintiff will take nothing or little under the word *553 “allowances” in his statute. But what of the perquisites which Horton and Blair and all the regularly retired officers will receive, and will have to be satisfied with? It is said that they are small, and that Congress could not have meant so little when it used the word “allowances,” though it meant just that when it used the word “emoluments.”[1] It is also said that Congress could not have meant these perquisites, because all officers retired under general law receive them. This seems to me to involve a presumption that Congress intended to discriminate in favor of plaintiff and against all other officers, and a search for a meaning that will fulfill that presumption. I think the presumption should be the opposite, and that the meaning which lies readily at hand should be adopted.
Three general statutes use substantially the language of the special act here in question. Section 1026, Title 10, U. S. Code, enacted in 1916, reenacted in 1920 and 1939, relates to army officers and is as follows:
Any officer who shall have served four years as chief of a branch, and who may subsequently be retired, shall be retired with the rank, pay, and allowances authorized by law for the grade held by him as such chief.
. Section 1026a, Title 10, U. S. Code, enacted in 1901, also relating to army officers, provides:
Any officer who on February 2,1901, held office in any corps or department, and who, since said date, has served or shall have served as chief of a staff corps or department and who shall subsequently be retired, shall be retired with the rank, pay, and allowances authorized by law for the retirement of such corps or department chief.
Section 443, Title 5, U. S. Code, enacted in 1908, reenacted in 1922 and again in 1938, without modification here material, is as follows:
Any officer of the Navy who is now serving or shall hereafter serve as a chief of a bureau in the Navy Department, and shall subsequently be retired, shall be retired with the rank, pay, and allowances authorized by *554 law for the retirement of such bureau chief, and any officer of the Navy who prior to July 1,1922, has served four years as chief of a bureau in the Navy Department and shall be retired subsequent to the completion of such period of service for physical disability due to wounds inflicted by the enemy while in the performance of his duty shall be retired with the rank, pay, and allowances now authorized by law for the retirement of a chief of a bureau.
Every officer retired under the provisions of those statutes has the same right to active service allowances after he retires from the active service that plaintiff has. If the word “allowances” as used in those statutes can be satisfied, as to officers retiring under them, by their receiving what their brethren receive in the way of perquisites, I see no reason why plaintiff should receive more. Although a departmental interpretation giving such retired officers the allowances of officers in the active service would have lent strong support to plaintiff’s argument, considering that two of the statutes have been recently reenacted without material change after many years of administration, plaintiff has made no showing that they have received such an interpretation.
The decision of the majority adheres to the previous rulings of the Court in the Sweeney and Ralston cases. I think those decisions were wrong. It seems to me that today’s decision of the Court in the Willey case relies upon an immaterial verbal distinction between that case, on the one hand, and the present case and the Sweeney and Ralston cases, on the other. The necessity for such distinctions should be removed by declining to follow further the Sweeney and Ralston cases. I would dismiss plaintiff’s petition. I am authorized to say that Judge Littleton agrees with the views here expressed.

 la addition to the perquisites mentioned in the Horton case, see U. S. Code, Tit. 34, sec. 994 (a), (6), (c), fixing the pay and allowances of an officer on the retired list, when on active duty.